1 | JOSEPH M. CHARTER, OSB #91158
Charter@AshlandOregon.org

2 | JOSEPH M. CHARTER, P.C.
450 SISKIYOU BLVD, STE. 3

3 | ASHLAND, OR 97520
(541) 488-9556

4 | Fax: (541) 488-1556

5 | Attorney for Plaintiff

6

FILED '11 APR 6 8:27USDC-ORM

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

LORI ANN HAYNES,

                  Plaintiffs,

    v.

TD SERVICE COMPANY, FIRST
FRANKLIN FINANCIAL CORP.,
RESIDENTIAL CREDIT SERVICES, INC.,
CHRISTOPHER C. DORR, LLC,

                  Defendants.

No. 13 - 3046 - CL

AFFIDAVIT IN SUPPORT OF
MOTION FOR TEMPORARY
RESTRAINING ORDER AND
PRELIMINARY INJUNCTION

STATE OF OREGON  )
             ) *ss.*
County of Jackson  )

    I, LORI ANN HAYNES, after first being sworn on oath, hereby depose and state as follows:

    1.    I am the Plaintiff in the above-captioned case. This affidavit is made on personal knowledge, except where otherwise qualified, and in support of my Motion for a Temporary Restraining Order and Preliminary Injunction.

    2.    I purchased the subject property located at 343 B Street, Ashland, Oregon on or about July 6, 2007 and obtained a mortgage loan from FIRST FRANKLIN FINANCIAL CORP. in the amount of $310,000.00. The Deed of Trust is attached hereto as Exhibit "1" and

Page 1 | AFFIDAVIT IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1   incorporated herein.  The Deed of Trust at page 1 identifies Mortgage Electronic Registration
2   Systems, Inc. (MERS) as the beneficiary: "**MERS is the beneficiary under this Security**
3   **Instrument**." (Emphasis in original). However, FIRST FRANKLIN FINANCIAL CORP. was
4   the "Lender," originated the loan, and serviced the loan until approximately August 1, 2010. I did
5   not borrow any money from MERS.  On July 15, 2010, FIRST FRANKLIN notified me that
6   servicing of the loan was being transferred to RESIDENTIAL CREDIT SERVICES, INC.  (RCS)
7   effective August 1, 2010. On August 12, 2010, RCS notified me that the loan was being referred
8   to local counsel for foreclosure.  See correspondence attached hereto as Exhibit "2" and
9   incorporated herein.

10   3. Beginning in July of 2009, I was unable to make the mortgage payments due to a
11   downturn in  my business rental income and the loss of a commercial tenant.  In December of
12   2009, FIRST FRANKLIN offered me a trial loan modification under the Home Affordable
13   Modification Program (HAMP). However, the modified payments were only some $200.00 less
14   that the regular loan payments.  Therefore, I still could not afford my mortgage payments.

15   4. In 2010, I engaged the services of the law firm of Paul Krasker of West Palm Beach,
16   Florida, to negotiate a loan modification on my behalf with RCS.  I submitted an application and
17   financial information package on September 21, 2010 and a hardship letter on November 11,
18   2010.  By letter dated January 27, 2011, RCS informed my former attorney that my application
19   for a loan modification was denied.  RCS has refused to consider my child support and rental
20   income  in determining my eligibility under the program.  With that income considered, I would
21   qualify for the program.  By letter dated March 25, 2011, RCS notified my former attorney that
22   it refused to further consider my eligibility for HAMP and that the foreclosure sale is scheduled
23   for April 12, 2011. The website RCS uses for tracking pending foreclosures also shows an April
24   12, 2011 foreclosure sale.  See correspondence and website information attached hereto as
25   Exhibit "3" and incorporated herein.  Since RCS began foreclosure proceedings before it ever
26

Page 2   AFFIDAVIT IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY
INJUNCTION

1    received my financial information or hardship letter, I believe that I am a victim of a "dual track"

2    foreclosure (foreclosure on homeowners being considered for loan modifications) and that RCS

3    never had any intention of negotiating a loan modification in good faith or fairly evaluating my

4    eligibility for HAMP.

5        4.    On August 11, 2010, at 8:30:00 a.m., TD SERVICE COMPANY ("TD")

6    simultaneously recorded the following documents:

7        A) an "Assignment of Trust Deed by Beneficiary" from MERS to FIRST FRANKLIN

8    (Instrument No. 2007-026393), attached hereto as Exhibit "4" and incorporated herein. The

9    document was signed on July 28, 2010 but purports to be effective July 22, 2010.

10        B) an "Appointment of Successor Trustee" from HOME LOAN SERVICES, INC., as

11    Servicer, to CHRISTOPHER C. DORR, LLC (Instrument No. 2007-026394), attached hereto as

12    Exhibit "5" and incorporated herein. The document was signed July 30, 2010 but purports to be

13    effective July 26, 2010. To my knowledge, HOME LOAN SERVICES, INC. was never a servicer

14    of my mortgage. I never received any notice of transfer of servicing from FIRST FRANKLIN or

15    RCS that the servicing of my loan was transferred to HOME LOAN SERVICES, INC.

16        C) an "Oregon Notice of Default and Election to Sell" ("NOD," Instrument No. 2007-

17    026395), attached hereto as Exhibit "6" and incorporated herein. The NOD at page two identifies

18    two different monthly payment amounts. I have no explanation as to why two different monthly

19    payment amounts would apply to my mortgage.

20        5. The NOD certifies that "no assignments of the Trust Deed by the . . . beneficiary have

21    been made except as recorded in the mortgage records of the county . . . in which the . . . real

22    property is situated." However, it is common knowledge that the sole purpose of MERS is to

23    facilitate unrecorded assignments of mortgages. MERS had no authority to assign my mortgage

24    because it was never the "beneficiary" of the trust deed in the sense that it never lent, or was

25    owed, any money. I am informed that FIRST FRANKLIN FIRST FRANKLIN participated in

26

JOSEPH M. CHARTER, P.C.
Attorney at Law
450 Siskiyou Blvd., Suite 3
Ashland, OR 97520
Tel. 541-488-9556  •  Fax 541-488-1566

1   hundreds of Mortgage Backed Securities Trusts around the time of my loan. I have identified six

2   which were dated August 7 and 8, 2007. See listing attached hereto as Exhibit "7" and

3   incorporated herein. I believe that my loan was sold into an investment pool and that FIRST

4   FRANKLIN currently has no interest in the promissory note. I believe that the beneficial interest

5   in the trust deed has been assigned multiple times, without recording those assignments as

6   required by ORS 86.735. I am asking the court to require the Defendants to provide me with an

7   accounting of all monies paid by me for my mortgage loan and an accounting of the handling of

8   the mortgage note and trust deed. As of the date of this affidavit, I have not found that any of the

9   Defendants have recorded the affidavits required by ORS Chapter 86 for non-judicial

10  foreclosures.

11       6.       I am in imminent danger of losing my home. I have attempted to negotiate a loan

12  modification in good faith with RCS. The foreclosure sale is scheduled for April 12, 2011. I have

13  invested substantial money in the improvement of the home. I owe approximately $304,000 on

14  the mortgage and have put the house on the market for $469,000.00. There has been substantial

15  interest by prospective buyers, with several coming back for second looks. The loss of my home

16  would be irreparable. I would lose approximately $165,000.00 in equity. I expect that the home

17  will sell soon, allowing me to fully pay off the mortgage loan.

18

19                                          
                                            LORI ANN HAYNES

20

21       SUBSCRIBED AND SWORN to before me this __5TH__ day of April, 2011.

22

23   OFFICIAL SEAL
     REBEKAH LEINA WALKER-EDWARDS
     NOTARY PUBLIC - OREGON
     COMMISSION NO. 451091

24   MY COMMISSION EXPIRES JULY 27, 2014        NOTARY PUBLIC – STATE OF OREGON
                                                My Commission Expires: __7-27-14__

25

26

Page 4  AFFIDAVIT IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY
INJUNCTION



After Recording Return To:

FIRST FRANKLIN FINANCIAL CORP.
c/o SECURITY CONNECTIONS
595 UNIVERSITY BLVD., DEPT. 2150
IDAHO FALLS, ID 83401

Jackson County Official Records **2007-031228**
R-TD
Cnt=1 Stn=5 THOMPSON **07/06/2007 08:01:00 AM**
$80.00 $5.00 $5.00 $11.00                    **Total:$101.00**



01277152007003112280180164

I, Kathleen S. Beckett, County Clerk for Jackson County, Oregon,
certify that the instrument identified herein was recorded in the Clerk
records.
            Kathleen S. Beckett - County Clerk

_FA - 1051703 JM_
─────────────── [Space Above This Line For Recording Data] ───────────────

# DEED OF TRUST

*80*
*10*
*11*

MIN: 100425240014886904

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20
and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated          June 15, 2007          , together with all
Riders to this document.

(B) "Borrower" is Lori Ann Haynes, an Unmarried Woman

Borrower is the trustor under this Security Instrument.

(C) "Lender" is FIRST FRANKLIN FINANCIAL CORP., AN OP. SUB. OF MLB&T CO., FSB          .
Lender is a Corporation                                                          organized and existing under
the laws of Delaware                                                             . Lender's address is
2150 NORTH FIRST STREET, SAN JOSE, California 95131

(D) "Trustee" is First American Title

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a
nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS
is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI
48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated          June 15, 2007          . The Note
states that Borrower owes Lender Three Hundred Ten Thousand and no/100
                              Dollars (U.S. $310,000.00          ) plus interest. Borrower has promised
to pay this debt in regular Periodic Payments and to pay the debt in full not later than          July 01, 2037          .

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

OREGON—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                    Form 3038 1/01

ITEM 2702L1 (0011)—MERS MFOR3114          *(Page 1 of 12 pages)*          4001488690 GreatDocs™
                                                                          To Order Call: 1-800-968-5775

PDF created with pdfFactory trial version www.pdffactory.com

EXHIBIT "1"

(H)  "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)  "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [X] Other(s) [specify] Prepay Rider |
| [ ] 1-4 Family Rider | [ ] Biweekly Payment Rider | |

(J)  "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)  "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)  "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)  "**Escrow Items**" means those items that are described in Section 3.

(N)  "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)  "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)  "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)  "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)  "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

2

PDF created with pdfFactory trial version www.pdffactory.com

**EXHIBIT "1"**

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the                COUNTY                of
[Type of Recording Jurisdiction]

JACKSON                                    :
[Name of Recording Jurisdiction]

LOT 22 AND THE EAST HALF OF LOT 21, BLOCK "B", RAILROAD ADDITION TO THE CITY OF ASHLAND, JACKSON COUNTY, OREGON, ACCORDING TO THE OFFICIAL PLAT THEREOF, RECORDED IN VOLUME 2, PAGE 42, PLAT RECORDS.

which currently has the address of                              343 B ST
[Street]

Ashland            , Oregon            97520            ("Property Address"):
[City]                                [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.    **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or

OREGON—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3038 1/01

ITEM 2702L3 (0011)—MERSMFOR3114                (Page 3 of 12 pages)        4001488690 GreatDocs™
                                                                           To Order Call: 1-800-968-5775

3

EXHIBIT "1"

partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

   2.   **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

   If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

   Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

   3.   **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

   Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

   The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest

OREGON—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 2702L4 (0011)—MERS MFOR3114                    *(Page 4 of 12 pages)*

Form 3038 1/01
4001488690 GreatDocs™
To Order Call: 1-800-968-5775

PDF created with pdfFactory trial version www.pdffactory.com

or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration

OREGON—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                   Form 3038 1/01

ITEM 2702L5 (0011)—MERS MFOR3114                    *(Page 5 of 12 pages)*              4001488690 GreatDocs™
To Order Call: 1-800-968-5775

EXHIBIT "1"

period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

OREGON—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

ITEM 2702L6 (0011)—MERS MFOR3114

*(Page 6 of 12 pages)*

Form 3038 1/01

4001488690 GreatDocs™
To Order Call: 1-800-968-5775

PDF created with pdfFactory trial version www.pdffactory.com

**EXHIBIT "1"**

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be

OREGON—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3038 1/01

4001488690 GreatDocs™
To Order Call: 1-800-968-5775

PDF created with pdfFactory trial version www.pdffactory.com

EXHIBIT "1"

applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12.  Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13.  Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14.  Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not

OREGON—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                          Form 3038 1/01

ITEM 2702L8 (0011)—MERSMFOR3114                      *(Page 8 of 12 pages)*                  4001488690 GreatDocs™
                                                                                           To Order Call: 1-800-968-5775

EXHIBIT "1"

PDF created with pdfFactory trial version www.pdffactory.com

limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property

OREGON—Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 2702L9 (0011)—MERS MFOR3114 (Page 9 of 12 pages)

Form 3038 1/01
4001488690 GreatDocs™
To Order Call: 1-800-968-5775

PDF created with pdfFactory trial version www.pdffactory.com

EXHIBIT "1"

and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18

OREGON—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                  Form 3038 1/01

ITEM 2702L10 (0011)—MERSMFOR3114                    *(Page 10 of 12 pages)*            4001488690 GreatDocs™
                                                                                      To Order Call: 1-800-968-5775

EXHIBIT "1"

unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Attorneys' Fees. As used in this Security Instrument and in the Note, attorneys' fees shall include those awarded by an appellate court.

26. Protective Advances. This Security Instrument secures any advances Lender, at its discretion, may make under Section 9 of this Security Instrument to protect Lender's interest in the Property and rights under this Security Instrument.

27. Required Evidence of Property Insurance.

### WARNING

Unless you provide us with evidence of the insurance coverage as required by our contract or loan agreement, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, also protect your interest. If the collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere.

You are responsible for the cost of any insurance purchased by us. The cost of this insurance may be added to your contract or loan balance. If the cost is added to your contract or loan balance, the interest rate on the underlying contract or loan will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage.

The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by Applicable Law.

OREGON—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                              Form 3038 1/01

ITEM 2702L11 (0011)—MERS MFOR3114                          *(Page 11 of 12 pages)*          4001488090 GreatDocs™
                                                                                            To Order Call: 1-800-968-5775

PDF created with pdfFactory trial version www.pdffactory.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 12 of this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____(Seal)            _____(Seal)
LORI ANN HAYNES              -Borrower                                           -Borrower

_____(Seal)            _____(Seal)
                             -Borrower                                           -Borrower

_____(Seal)            _____(Seal)
                             -Borrower                                           -Borrower

Witness:                                  Witness:

_____                  _____

State of Oregon
County of Jackson

This instrument was acknowledged before me on  June 21, 2007                    (date) by
LORI ANN HAYNES

                                                          (person[s] acknowledging).

                                                          _____
OFFICIAL SEAL                                             Notary Public for Oregon
J M MERIWETHER
NOTARY PUBLIC-OREGON
COMMISSION NO. 402785
MY COMMISSION EXPIRES MAR. 05, 2010              My commission expires: 3-5-2010

OREGON—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3038 1/01
ITEM 2702L12 (0011)—MERS MFOR3114              (Page 12 of 12 pages)              4001488690  GreatDocs™
                                                                                 To Order Call: 1-800-968-5775

                                                   12

PDF created with pdfFactory trial version www.pdffactory.com

# PREPAYMENT RIDER

This Prepayment Rider is made this          15th          day of          June 2007
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or the
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure
Borrower's Note (the "Note") to
FIRST FRANKLIN FINANCIAL CORP., AN OP. SUB. OF MLB&T CO., FSB
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

343 B ST
Ashland, OR 97520

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
instrument, Borrower and Lender further covenant and agree as follows:

Borrower can make a partial prepayment at anytime without paying any charge. Borrower may make a
full prepayment at any time subject to a prepayment charge as follows:

If within the first          24          months after the date Borrower executes the Note, Borrower makes a full
prepayment (including prepayments occurring as a result of the acceleration of the maturity of the Note),
Borrower must, as a condition precedent to a full prepayment, pay a prepayment charge on any amount prepaid
in any 12 month period in excess of 20% of the unpaid balance. The prepayment charge will equal the interest
that would accrue during a six-month period on the Excess Principal calculated at the rate of interest in effect
under the terms of the Note at the time of the full prepayment.

## NOTICE TO BORROWER

**Do not sign this loan agreement before you read it. This loan agreement provides for the payment of a
penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Prepayment Rider.

_____ (Seal)          _____ (Seal)
LORI ANN HAYNES                    -Borrower                                                    -Borrower

_____ (Seal)          _____ (Seal)
                                   -Borrower                                                    -Borrower

_____ (Seal)          _____ (Seal)
                                   -Borrower                                                    -Borrower

Adjustable Rate Prepayment Rider - First Lien – AK, AL, AZ, CA, CO, CT, DC, DE, FL, GA, HI, IA, ID, KS, LA, MA, MD, MN,
MT, ND, NE, NH, NJ, NM, NV, NY, OK, OR, PA, RI, SC, SD, TN, TX, UT, VA, VT, WA, WY

MFCD6028
FF003290                                                                                          4001488690

$l\ 3$

PDF created with pdfFactory trial version www.pdffactory.com

EXHIBIT "1"

# ADJUSTABLE RATE RIDER
(LIBOR 6 Month Index (As Published In The Wall Street Journal) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this    15th    day of     June 2007
, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

FIRST FRANKLIN FINANCIAL CORP., AN OP. SUB. OF MLB&T CO., FSB
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

343 B ST
Ashland, OR 97520
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of     7.7500%. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of     July 2009 ,
and on that day every    6th    month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal.* The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Five and Four Tenths
percentage points (    5.4000%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR 6 MONTH INDEX
(AS PUBLISHED IN THE WALL STREET JOURNAL) – Single Family

ITEM 5407*L1 (C5751L) (0910)    MFCD6053     *(Page 1 of 3 pages)*

4001488690    GREATLAND ■
To Order Call: 1-800-530-9393 □Fax 618-791-1131

14

EXHIBIT "1"

PDF created with pdfFactory trial version www.pdffactory.com

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D)  Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than          10.7500% or less than          7.7500%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One

percentage point(s) (          1.0000%) from the rate of interest I have been paying for the preceding 6     months; subject to the following limits: My interest rate will never be greater than          13.7500%, nor less than          7.7500%.

**(E)  Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)  Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the telephone number of a person who will answer any question I may have regarding the notice.

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

ITEM 5407412 (C5751L) (9910)    MFCD6053          *(Page 2 of 3 pages)*          4001488690          GREATLAND ■
To Order Call: 1-800-530-9393 □Fax 616-791-1131

15

**EXHIBIT "1"**

PDF created with pdfFactory trial version www.pdffactory.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Adjustable Rate Rider.

_____(Seal)          _____(Seal)
LORI ANN HAYNES                -Borrower                                          -Borrower

_____(Seal)          _____(Seal)
                                            -Borrower                                          -Borrower

_____(Seal)          _____(Seal)
                                            -Borrower                                          -Borrower

*[Sign Original Only]*

MFCD6053
5407413                              *(Page 3 of 3 pages)*                              4001488690

EXHIBIT "1"

**First Franklin Loan Services** | P.O. Box 1838
Pittsburgh, PA 15230-1838

JULY 15, 2010

**THE TRANSFER NOTED IN THIS LETTER AFFECTS THE LOAN NUMBER LISTED BELOW. IF YOU HAVE OTHER LOANS WITH FIRST FRANKLIN, THEY ARE NOT AFFECTED BY THIS TRANSFER.**

LORI HAYNES
343 B ST
ASHLAND, OR 97520

Re: First Franklin Loan Services Loan Number: 1044900193

Dear Mortgage Customer:

Effective AUGUST 1, 2010, the servicing of your mortgage loan will be transferred to RESIDENTIAL CREDIT SOLUTIONS, INC. The transfer of your servicing does not affect the original terms or conditions of your loan contract, other than the terms relating to servicing.

Shortly, you will begin receiving coupons or a monthly billing statement from RESIDENTIAL CREDIT SOLUTIONS, INC. If these items do not arrive prior to the time that you are required to make your next payment, please send your payment along with the remittance portion of your First Franklin Loan Services monthly statement to:

**Payments**
RESIDENTIAL CREDIT SOLUTIONS, INC.
P.O. BOX 78954
PHOENIX, AZ 85062-8954

All future payments should be mailed directly to the payment address on your new monthly billing statement or coupon book.

JULY 31, 2010 is the last date for which First Franklin Loan Services will accept and process your monthly mortgage payment. Any payments received by First Franklin Loan Services after the transfer of servicing will be forwarded to the new servicer. On AUGUST 1, 2010, RESIDENTIAL CREDIT SOLUTIONS, INC. will begin accepting your payments. If your mortgage payment is automatically deducted from a checking or savings account, this service will not continue. Please mail your payment directly to RESIDENTIAL CREDIT SOLUTIONS, INC. If you are interested in reestablishing this service, please contact them for more information.

If you have any questions regarding transactions that occurred on your account on or before JULY 31, 2010, you may contact the First Franklin Loan Services Customer Service Department at 1-800-346-6437, Monday – Friday, 8:00 a.m. - 9:00 p.m. ET. For transactions that occurred on or after AUGUST 1, 2010, you may contact the RESIDENTIAL CREDIT SOLUTIONS, INC., Customer Service Department at 1-800-737-1192, Mon. – Thurs. 7:00 a.m.– 11:00 p.m., Friday 7:00 a.m.– 9:00 p.m. , Saturday 7:00 a.m.-1:00 p.m., Sunday 4:00 p.m.-9:00 p.m. CT, if you have any questions.

During January of next year, First Franklin Loan Services will send you a statement reflecting your account activity for the portion of the year that we serviced your loan. Your new servicer will send a statement for the portion of the year they serviced your loan. You will need to consolidate both statements to obtain the totals you paid for interest and property taxes.

Please refer to the enclosed Notice for additional information about this transfer of servicing and your rights under federal law.

It has been a pleasure having you as a First Franklin Loan Services customer, as we appreciate the opportunity to have been of service to you.

Sincerely,

Sharon A. Schwan
Customer Service Manager

YOU SHOULD CONSIDER THIS LETTER AS COMING FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. ANY INFORMATION PROVIDED BY YOU WILL BE USED TO COLLECT THIS DEBT. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY.

CALIFORNIA RESIDENTS: The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work. They know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

**EXHIBIT "2"**



08/12/10

LORI ANN HAYNES
343 B ST
ASHLAND OR 97520

RE: RCS Loan 2000125442

Dear Borrower(s):

On 07/26/10, your loan was referred to local counsel to begin foreclosure action on the property located at 343 B ST , ASHLAND, OR 97520.

The total amount due on this loan as of the date of this letter is $38892.54, as well as any unbilled fees and costs associated with the preservation of the property or the foreclosure action filed.

You are encouraged to contact our Loss Mitigation representatives at (800) 737-1192 to discuss alternatives available to prevent the foreclosure sale of your property. Our Customer Service Representatives are available Monday through Thursday between 7:00 a.m. and 11:00 p.m., Friday, between 7:00 a.m. and 9:00 p.m., Saturday 7:00 a.m. and 1:00 p.m. and Sunday 4:00 p.m. and 9:00 p.m., Central Time.

Your prompt attention to this matter is appreciated.

Sincerely,

Loss Mitigation Department
Residential Credit Solutions, Inc.

Residential Credit Solutions, Inc
4282 N. Freeway, Fort Worth, Texas 76137
www.residentialcredit.com.

RW0163

EXHIBIT "2"



January 27, 2011

The Law Office of Paul A. Krasker, P.A.
225 South Olive Avenue
West Palm Beach, FL 33401
Attn: Tony Licavoli

Re: RCS Loan Number: 2000125442
Property Address: 343 B Street, Ashland, OR 97520

Dear Mr. Licavoli:

This letter is in response to correspondence received by Residential Credit Solutions, Inc. (RCS) for the loan referenced above.

Please be advised that this account was denied for the Home Affordable Modification Program (HAMP) on December 14, 2010. The HAMP was declined because we were unable to create a payment equal to 31% of Ms. Haynes reported monthly gross income without changing the terms with the program requirements.

The verifiable income received at the time of review was Ms. Haynes business income for a total gross monthly income of $2,837.88. We were unable to substantiate the stated child support since there was no court order in effect or the stated rental income. There was no rental income claimed on Ms. Haynes 2009 income tax return. Additionally, a letter stating a borrower is renting a room is not sufficient evidence of rental income. If there is a change in income or proof of additional income for Ms. Haynes, please forward supporting documentation to our Loss Mitigation department to fax number (888) 775-7250.

If you need further assistance, please contact us at (800) 737-1192. Our Loss Mitigation Representatives are available Monday through Thursday between 7:00 a.m. and 11:00 p.m., Friday between 7:00 a.m. and 9:00 p.m. and Saturday, between 7:00 a.m. and 1:00 p.m., and Sunday between 4:00 p.m. and 9:00 p.m., Central Time.

Sincerely,

Research Department
Residential Credit Solutions, Inc.

4282 North Freeway, Fort Worth, TX 76137
Website: www.residentialcredit.com

EXHIBIT "3"



March 25, 2011

The Law Office of Paul A. Krasker, P.A.
225 South Olive Avenue
West Palm Beach, FL 33401
Attn: Tony Licavoli


Re: RCS Loan Number: 2000125442
Property Address: 343 B Street, Ashland, OR 97520

Dear Mr. Licavoli:

This letter is in response to correspondence received by Residential Credit Solutions, Inc. (RCS) for the loan referenced above.

Your letter requests that RCS reconsider further evaluation for the Home Affordable Modification Program (HAMP). Please be advised the projected foreclosure sale was postponed from March 10, 2011 until April 12, 2011 to allow for additional HAMP review.

Upon last review on March 10, 2011, we were unable to substantiate the additional income submitted for this account due to inconsistency in income or no history to support the information provided. In reviewing the additional information submitted, we have determined the outcome to remain the same as the original denial dated December 14, 2010. Both denials were due to being unable to create a payment equal to 31% of Ms. Haynes gross monthly income without changing the terms with the program requirements.

We were unable to qualify Mr. Haynes for alternative modification options because a balloon payment greater than 30% of the modified principal balance would be required. Ms. Haynes income is also unable to support a Repayment or Forbearance Plan. In order to prevent the foreclosure sale scheduled for April 12, 2011, Ms. Haynes would need to reinstate the past due balance. As of the date of this letter, the reinstatement amount good through March 25, 2011 is $61,507.21. For an updated reinstatement amount, please contact our Loss Mitigation Department at the toll free telephone number provided on the following page.


Residential Credit Solutions, Inc.
PO Box 163889, Fort Worth, TX 76161-3889
Website: www.residentialcredit.com

EXHIBIT "3"

If you need further assistance, please contact us at (800) 737-1192. Our Customer Service Representatives are available Monday through Thursday between 7:00 a.m. and 11:00 p.m., Friday between 7:00 a.m. and 9:00 p.m. and Saturday, between 7:00 a.m. and 1:00 p.m., and Sunday between 4:00 p.m. and 9:00 p.m., Central Time.


Sincerely,
Research Department
Residential Credit Solutions, Inc.

EXHIBIT "3"



| Back to Search | Print this page | Add to My Property List | View My Properties |

Numeric TS #: **514974**
Full TS#: **D 514974 D**
TAC #: **917721**
APN/Parcel #: **1-006476-3**
Property Address: **343 B ST , ASHLAND, OR 97520-0000**

### File Status

Current Status: **Has been postponed**

| | |
|---|---|
| Postponed to: **4/12/2011** | Sale State: **OR** |
| Sale time: **10:00 AM** | Sale County: **JACKSON** |
| Reason for postponement: **BENEFICIARY REQUEST** | Sale Location: **BETWEEN THE INI OF THE MAIN ENT COUNTY COURTH MEDFORD** |

Contact: Contact the foreclosure dept of the beneficiary or servicer at:
Phone #: **(566) 913-5173**
Loan #: **2000125442**

**Map, Property Photo and Directions:**



EXHIBIT "3"

Jackson County Official Records 2010-026393
R-TD
Cnt=1 MORGANSS 08/11/2010 08:30:00 AM
$10.00 $10.00 $5.00 $11.00 $15.00 Total:$51.00

01439330201000263930020024

I, Christine Walker, County Clerk for Jackson County, Oregon, certify that the instrument identified herein was recorded in the Clerk records.
Christine Walker - County Clerk

(1)

**OREGON**
COUNTY OF: *JACKSON*
POOL NO.:
LOAN NO.: *(4001488690 ) 1044900193 [FC20492]*

D514974

RECORDING REQUESTED BY AND
AFTER RECORDING RETURN TO:
*TD SERVICE COMPANY*
*1820 EAST FIRST ST., # 210*
*SANTA ANA, CA 92705*
*PH: (714) 480-5640*
*ATT: JOANNA DEVELASCO*

*Assignment-Interv.-Recorded* FA-16052228-TSG

**ASSIGNMENT OF TRUST DEED BY BENEFICIARY OR HIS SUCCESSOR IN INTEREST** 10

FOR VALUE RECEIVED, *MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR FIRST FRANKLIN FINANCIAL CORP., AN OP. SUB. OF MLB&T CO., FSB, (MERS) AS NOMINEE FOR FIRST FRANKLIN FINANCIAL CORP., AN OP. SUB. OF MLB&T CO., FSB* 26 15

located at *2150 NORTH 1ST STREET, SAN JOSE CA 95131*
who is the beneficiary or his successor in interest under that certain trust deed dated: *JUNE 15, 2007*, executed and delivered by: *LORI ANN HAYNES, AN UNMARRIED WOMAN*

grantor, to *FIRST AMERICAN TITLE*

trustee, in which *MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR FIRST FRANKLIN FINANCIAL CORP., AN OP. SUB. OF MLB&T CO., FSB*

is the beneficiary, recorded on *JULY 5, 2007*, in book ______ on page ______ or as Instrument No. *2007-031228* Reel/File number ______, Microfilm number ______ of the Mortgage Records of *JACKSON* County, Oregon, and conveying real property in said county described as follows:

LOT 22 AND THE EAST HALF OF LOT 21, BLOCK "B", RAILROAD ADDITION TO THE CITY OF ASHLAND, JACKSON COUNTY, OREGON, ACCORDING TO THE OFFICIAL PLAT THEREOF, RECORDED IN VOLUME 2, PAGE 42, PLAT RECORDS.

hereby grants, assigns, transfers and sets over to ***First Franklin Financial Corporation*** *150 ALLEGHENY CENTER PITTSBURGH, PA 15212*

______ his executors, administrators and assigns, hereinafter called assignee, all his beneficial interest in and under said trust deed, together with the notes, moneys and obligations therein described or referred to, with the interest thereon, and all rights and benefits whatsoever accrued or to accrue under said trust deed.

*J=HL8110108AI.s.49419*

Loan No.

**EXHIBIT "4"**

Loan No.  *(4001488690 ) 1044900193 [FC20492]*

    The undersigned hereby covenants to and with said assignee that the undersigned is the beneficiary or his successor in interest under said trust deed and is the owner and holder of the beneficial interest therein; that he has good right to sell, transfer and assign the same, as aforesaid.

    In construing this instrument and whenever the contest hereof so requires, the masculine gender includes the feminine and the neuter and the singular number includes the plural.

IN WITNESS WHEREOF, undersigned has hereunto set his hand; if the undersigned is a corporation, it has caused its corporate name to be signed by its officers duly authorized thereunto by order of its Board of Directors.

DATED: *JULY 28, 2010*  , But effective ____ *July 22, 2010.*

<div style="text-align:right">

*MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.*
*(MERS) AS NOMINEE FOR FIRST FRANKLIN FINANCIAL*
*CORP., AN OP. SUB. OF MLB&T CO., FSB*

</div>

By_____    By_____
                                                 *KRYSTAL HALL*
                                                 *ASST SECRETARY FOR ASSIGNMENTS*

STATE OF *IDAHO*                  )
                           ) ss
COUNTY OF *BONNEVILLE*            )

On *JULY 28, 2010*  , before me, the undersigned, a Notary Public in and for said County and State, personally appeared *KRYSTAL HALL*                  known to me to be the person who executed the within instrument as the *ASST SECRETARY FOR ASSIGNMENTS*
_____, and _____ known to me to be the person who executed the within instrument as the _____
_____ the Corporation that executed the within instrument and acknowledged to me that the Corporation executed the within instrument pursuant to its by-laws or a resolution of its board of directors.

WITNESS and official seal.

> VICKIE SORG
> NOTARY PUBLIC
> STATE OF IDAHO

*VICKIE SORG*   *(COMMISSION EXP. 08-18-11)*
NOTARY PUBLIC
(NMRI.OR.2)
  *P=S.002.00050.733*          *J=HL8110108AI.s.49419*
  *C=s.333.0071*

<div style="text-align:right">

**EXHIBIT "4"**

</div>

②

RECORDING REQUESTED BY

T.D. SERVICE COMPANY

and when recorded mail to

T.D. SERVICE COMPANY
1820 E. FIRST ST., SUITE 210
P.O. BOX 11988
SANTA ANA, CA 92711-1988

Jackson County Official Records **2010-026394**
R-AT
Cnt=1 MORGANSS          **08/11/2010 08:30:00 AM**
$10.00 $20.00 $10.00 $5.00 $11.00    **Total:$71.00**

01439338201000263940020026
I, Christine Walker, County Clerk for Jackson County, Oregon, certify
that the instrument identified herein was recorded in the Clerk
records.          Christine Walker - County Clerk

FA-1605228-TSC Space above this line for recorder's use _____

## APPOINTMENT OF SUCCESSOR TRUSTEE

10 +20
26
15

T.S. No: D514974 OR      Unit Code: D      Loan No: 1044900193/HAYNES      Investor No: 4005584937
AP #1: 1-006476-3
Property Address: 343 B ST, ASHLAND, OR 97520

FIRST AMERICAN TITLE was the original Trustee in the Deed of Trust hereinafter described:

Trustor: LORI ANN HAYNES

Dated June 15, 2007, Recorded July 6, 2007  as Instr. No.  2007-031228  in Book --- Page --- of Official
Records in the office of the Recorder of JACKSON County; OREGON .

The undersigned, who is the present beneficiary under said Deed of Trust desires to appoint a new trustee in the
place of the original trustee named above;

NOW THEREFORE, in view of the premises, the undersigned hereby appoints **CHRISTOPHER C.
DORR,LLC, OSBA # 992526, 16245 NW McNamee, Portland, OR 97231**
as successor trustee under said Deed of Trust; he to have all the powers of said original trustee, effective
forthwith.

In construing this instrument and whenever the context thereof so requires, the masculine gender includes the
feminine and the neuter and the singular number includes the plural.

**EXHIBIT "5"**

Page 2
T.S. No: D514974 OR    Unit Code: D    Loan No: 1044900193/HAYNES    Investor No: 4005584937

IN WITNESS THEREOF, the undersigned beneficiary has hereunto set its hand; if the undersigned is a corporation, it has caused its corporate name to be signed hereunto by its officers duly authorized thereunto by order of its Board of Directors.

Effective Date: 07/26/10

FIRST FRANKLIN FINANCIAL CORPORATION
BY Home Loan Services, Inc., as Servicer

BY _____    BY _____
Bryan G. Kusich, VP - Default Operations        Bruce Barron, Director For Home
For Home Loans Services, Inc. as Servicer        Loans Services, Inc. as Servicer

FOR CORPORATE ACKNOWLEDGEMENT
STATE OF _____ Pennsylvania _____ )
COUNTY OF _____ Allegheny _____ ) SS

On ___July 30ᵗʰ, 2010___ before me, the undersigned, a Notary Public in and for said County and State personally appeared
_____ Bryan G. Kusich _____, personally known to me to be the ___Vice President___, and
_____ Bruce Barron _____ personally known to me to be the
___Director___ of the Corporation that executed the within Instrument, personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons who executed the within Instrument, on behalf of ___Home Loan Services, Inc.___ the Corporation therein named, and acknowledged to me that such Corporation executed the within Instrument pursuant to its by-laws or a resolution of its board of directors. WITNESS my hand and official seal.

_____ Annette Camara _____
Notary Public in and for said County and State

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Annette Camara, Notary Public
City of Pittsburgh, Allegheny County
My Commission Expires June 5, 2012
Member, Pennsylvania Association of Notaries

2

EXHIBIT "5"

③

RECORDING REQUESTED BY

T.D. SERVICE COMPANY

and when recorded mail to

T.D. SERVICE COMPANY
1820 E. FIRST ST., SUITE 210
P.O. BOX 11988
SANTA ANA, CA 92711-1988

Jackson County Official Records **2010-026395**
R-ND
Cnt=1 MORGANSS    **08/11/2010 08:30:00 AM**
$20.00 $10.00 $5.00 $11.00 $15.00    **Total:$61.00**



0143933720100026395004 0046
I, Christine Walker, County Clerk for Jackson County, Oregon, certify
that the instrument identified herein was recorded in the Clerk
records.
Christine Walker - County Clerk

FA-1605228-TS6
_____ Space above this line for recorder's use _____

## OREGON NOTICE OF DEFAULT AND ELECTION TO SELL

20
26
15



T.S. No: D514974 OR    Unit Code: D    Loan No: HAYNES    Investor No: 4005584937
AP #1: 1-006476-3
Title #: 4500402

Reference is made to that certain Trust Deed made by LORI ANN HAYNES as Grantor, to
FIRST AMERICAN TITLE as Trustee, in favor of FIRST FRANKLIN FINANCIAL CORP.,
AN OP. SUB. OF MLB&T CO., FS B as Beneficiary.

Dated June 15, 2007, Recorded July 6, 2007  as Instr. No. 2007-031228  in Book  --- Page
--- of Official Records in the office of the Recorder of JACKSON County; OREGON

covering the following described property situated in said county and state to wit:
LOT 22 AND THE EAST HALF OF LOT 21, BLOCK "B", RAILROAD ADDITION TO
THE CITY OF ASHLAND, JACKSON COUNTY, OREGON, ACCORDING TO THE
OFFICIAL PLAT THEREOF, RECORDED IN VOLUME 2, PAGE 42, PLAT RECORDS.

The street or other common designation if any, of the real property described above is
purported to be:
343 B ST, ASHLAND, OR 97520

The undersigned Trustee disclaims any liability for any incorrectness of the above street or
other common designation.

The undersigned CHRISTOPHER C. DORR,LLC, OSBA # 992526 hereby certifies that no
assignments
of the Trust Deed by the trustee or by the beneficiary and no appointments of a successor
trustee have been made except as recorded in the mortgage records of the county or counties
in which the above described real property is situated. Further, that no action has been
instituted to recover the debt, or any part thereof, now remaining secured by the said Trust
Deed, or, if such action has been instituted, such action has been dismissed, except as
permitted by ORS 86-735 (4).

There is a default by the Grantor or other person owing an obligation, the performance of
which is secured by said Trust Deed, or by their successor in interest, with respect to
provisions therein which authorize sale in the event of default of such provisions. The default
for which foreclosure is made is Grantor's failure to pay when due the following sums:

(

**EXHIBIT "6"**

Page 2
T.S. No: D514974 OR    Unit Code: D    Loan No: HAYNES    Investor No: 4005584937

```
7 PYMTS FROM 07/01/09 TO 01/01/10 @ 2,545.78          $17,820.46
7 L/C FROM 07/16/09 TO 01/16/10 @ 111.04                 $777.28
7 PYMTS FROM 02/01/10 TO 08/01/10 @ 2,532.22          $17,725.54
6 L/C FROM 02/16/10 TO 07/16/10 @ 111.04                 $666.24
ACCRUED LATE CHARGES                                     $533.12
IMPOUND/ESCROW DEFICIT                                 $2,263.36
MISCELLANEOUS FEES                                        $88.50
PLUS RECOVERABLE BALANCE $127.50                         $127.50

Sub-Total of Amounts in Arrears:                      $40,002.00
```

Together with any default in the payment of recurring obligations as they become due.

By reason of said default, the beneficiary has declared all sums owing on the obligation secured by said Trust Deed immediately due and payable, said sums being the following, to wit:  Principal $304,581.33 together with interest as provided in the note or other instrument secured from 06/01/09,  and such other costs and fees as are due under the note or other instrument secured, and as are provided by statute.

Notice hereby is given that the beneficiary and trustee, by reason of said default, have elected and do hereby elect to foreclose said Trust Deed by advertisement and sale pursuant to Oregon Revised Statutes Section 86.705 to 86.795 and to cause to be sold at public auction to the highest bidder for cash the interest in the said described property which the Grantor had, or had the power to convey, at the time of the execution by Grantor of the Trust Deed, together with any interest the Grantor or his successors in interest acquired after the execution of the Trust Deed, to satisfy the obligations secured by said Trust Deed and the expenses of the sale, including the compensations of the trustee as provided by law, and the reasonable fees of trustee's attorneys.

Said sale will be held at the hour of 10:00 A.M.  in accord with the standard of time established by O.R.S.187.110 on December 13, 2010 at the following place: BETWEEN THE INNER AND OUTER DOORS OF THE  MAIN ENTRANCE TO THE JACKSON COUNTY COURTHOUSE, 10 S. OAKDALE, MEDFORD , County of JACKSON, State of Oregon.

Other than as shown of record, neither the said beneficiary or the said trustee has any actual notice of any person having or claiming to have any lien upon or interest in the real property hereinabove described subsequent to the interest of the trustee in the Trust Deed, or of any successor in interest to the grantor or of any lessee or other person in possession of or occupying the property, except:

NAME AND LAST KNOWN ADDRESS   NATURE OF RIGHT, LIEN OR INTEREST

T.S. No: D514974

Notice is further given that any person named in O.R.S. 86.753 has the right, at any time prior to five days before the trustee conducts the sale, to have this foreclosure proceeding dismissed and the Trust Deed reinstated by payment to the beneficiary of the entire amount then due (other than such portion of the principal as would not then be due had no default occurred) and by curing any other default complained of herein that is capable of being cured by tendering the performance required under the obligation of Trust Deed, and in addition to paying said sums or tendering the performance necessary to cure default, by paying all costs and expenses actually incurred in enforcing the obligation and Trust Deed, together with trustee's and attorney's fees not exceeding the amounts provided by O.R.S. 86.753.

In construing this notice, the masculine gender includes the feminine and the neuter, the singular gender includes the plural, the word "Grantor" includes any successor in interest to the Grantor as well as any other person owing an obligation, the performance, of which is secured by said Trust Deed, and the words "trustee" and "beneficiary" include their respective successors in interest, if any.

We are assisting the Beneficiary to collect a debt and any information we obtain will be used for that purpose whether received orally or in writing.

DATED: July 26, 2010

CHRISTOPHER C. DORR, LLC   OSBA#992526

By _____
CHRISTOPHER C. DORR, ATTORNEY AT LAW

DIRECT INQUIRIES TO:
T.D.SERVICE COMPANY
FORECLOSURE DEPARTMENT
1820 E. FIRST ST., SUITE 210
P. O.BOX 11988
SANTA ANA, CA  92711-1988
800/843-0260

3

T.S. No: D514974

STATE OF ___OREGON___ )
COUNTY OF ___MULTNOMAH___ )ss

On _July 26, 2010_ before me, ___Lonny D. Nielsen___
personally appeared _CHRISTOPHER C. DORR_

personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____ (Seal)

OFFICIAL SEAL
**LONNY D NIELSEN**
NOTARY PUBLIC   OREGON
COMMISSION NO. 435201
MY COMMISSION EXPIRES DEC. 18, 2012

4

EXHIBIT "6"

| | | | |
|---|---|---|---|
| MERRILL LYNCH FIRST FRANKLIN MORTGAGE LOAN TRUST, SERIES 2007-3 ( ) | 10-D | 4 | 09/07/2007 |
| MERRILL LYNCH FIRST FRANKLIN MORTGAGE LOAN TRUST, SERIES 2007-A ( ) | 424B5 | 86 | 09/07/2007 |
| MERRILL LYNCH FIRST FRANKLIN MORTGAGE LOAN TRUST, SERIES 2007-2 ( ) | 10-D | 12 | 09/07/2007 |
| FIRST FRANKLIN MORTGAGE LOAN TRUST, SERIES 2007-FF2 ( ) | 10-D | 4 | 09/07/2007 |
| FIRST FRANKLIN MORTGAGE LOAN TRUST, SERIES 2007-FF1 ( ) | 10-D | 4 | 09/07/2007 |
| MERRILL LYNCH FIRST FRANKLIN MORTGAGE LOAN TRUST, SERIES 2007-A ( ) | FWP | 82 | 08/30/2007 |
| MERRILL LYNCH FIRST FRANKLIN MORTGAGE LOAN TRUST, SERIES 2007-A ( ) | FWP | 4 | 08/30/2007 |
| MERRILL LYNCH FIRST FRANKLIN MORTGAGE LOAN TRUST, SERIES 2007-A ( ) | FWP | 16 | 08/29/2007 |
| NATIONAL CITY CORP (NCC) | 424B2 | 4 | 08/28/2007 |
| NATIONAL CITY CORP (NCC) | 424B3 | 4 | 08/22/2007 |
| FIRST FRANKLIN MORTGAGE LOAN TRUST, SERIES 2007-FFC ( ) | 10-D | 8 | 08/08/2007 |
| MERRILL LYNCH FIRST FRANKLIN MORTGAGE LOAN TRUST, SERIES 2007-4 ( ) | 10-D | 4 | 08/08/2007 |
| MERRILL LYNCH FIRST FRANKLIN MORTGAGE LOAN TRUST, SERIES 2007-3 ( ) | 10-D | 4 | 08/07/2007 |
| MERRILL LYNCH FIRST FRANKLIN MORTGAGE LOAN TRUST, SERIES 2007-2 ( ) | 10-D | 12 | 08/07/2007 |
| FIRST FRANKLIN MORTGAGE LOAN TRUST, SERIES 2007-FF2 ( ) | 10-D | 4 | 08/07/2007 |
| FIRST FRANKLIN MORTGAGE LOAN TRUST, SERIES 2007-FF1 ( ) | 10-D | 4 | 08/07/2007 |
| MICROSTRATEGY INC (MSTR) | 8-K | 4 | 08/02/2007 |
| FIRST FRANKLIN MORTGAGE LOAN TRUST, SERIES 2007-FF1 ( ) | 10-D/A | 4 | 07/12/2007 |